**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARITZ HOLDINGS INC. and MARITZ MOTIVATION INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 4:21-cv-00438 |
| v. | ) ) ) | |
| DREW CARTER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

### Introduction

After Maritz laid off or furloughed a number of the Individual Defendants in August of 2020, they formed Whistle. Now, more than seven months later, Maritz has concluded that Whistle is competing with it. The Complaint makes sweeping, conclusory allegations that (i) Maritz has "substantial volumes" of largely undescribed trade secrets, (ii) all seven of the Individual Defendants had "extensive access" to all of these supposed trade secrets, and (iii) based solely on Maritz's self-serving reading of Whistle's website, Maritz believes that *it is inevitable* that the Individual Defendants will each disclose all of these trade secrets, even supposed "intangible" trade secrets that exist in the minds of the Individual Defendants.

Maritz's "inevitable disclosure" trade secret misappropriation claims fail because they are built upon a foundation that consists purely of conclusions and inferences. Maritz's claim for breach of the restrictive covenant agreements fails because the Complaint makes clear that those agreements lack consideration and are otherwise unenforceable on their face. The other claims fail because they are derivative of the trade secret claims and the breach of contract claims, or they

suffer from additional legal defects that require dismissal. Accordingly, the Complaint should be dismissed.

## Relevant Background

Plaintiffs, Maritz Holdings Inc. ("Maritz Holdings") and Maritz Motivation Inc. ("Maritz Motivation") (collectively "Maritz") provide loyalty and incentive programming and strategy. Complaint, ¶ 27.[1] Maritz Motivations "is the Maritz subsidiary responsible for designing, marketing, selling, and implementing programs intended to cultivate customer loyalty, employee engagement, and increased sales – including channel sales incentive programing." *Id.* at ¶ 28. The Complaint describes "channel sales incentive programs" as "a series of policies and programs implemented within a business to incentivize and encourage a wide range of desirable behaviors for its channel sales partners." *Id.* at ¶ 31.

Defendants Carter, Dornfeld, Wolfersberger, Newman, Hrdlicka, Valenti, and Conwell (collectively the "Individual Defendants") are all former employees of either Maritz Motivation or Maritz Holdings and held various positions at Maritz ranging in seniority from President to "Analyst – Developer I." *Id.* at ¶¶ 59-65.

Maritz alleges that each of the Individual Defendants electronically signed a Confidentiality, Non-Competition, Non-Solicitation and Inventions Agreement (the "Restrictive Covenant Agreements") through Maritz's "Learning Management System module in conjunction with" the Individual Defendant's "new hire paperwork." *Id.* at ¶ 47.[2] The Restrictive Covenant Agreement contains broadly-worded non-compete, non-solicitation, and confidentiality provisions. *See,* Ex. A to Complaint. The Complaint concedes that Maritz provided no

---

[1] Although Defendants generally dispute the veracity of the Complaint's allegations, they are taken as true solely for the purposes of the Motion to Dismiss.

[2] The Complaint, however, includes only an unsigned version of the Restrictive Covenant Agreement as Exhibit A.

5805333/9/20460.001

consideration to the Individual Defendants for the Restrictive Covenant Agreements other than the purported consideration of continued at-will employment and "the *opportunity* for valuable training, work assignments, and exposure to Confidential Information during the course of [the Individual Defendants'] employment." *Id.* at ¶ 47 and Ex. A to Complaint (emphasis added).

"By the end of 2020," Maritz terminated the employment of Dornfeld and Wolfersberger "as part of a reduction in force." *Id.* at ¶ 76. Martiz also planned to lay-off Carter and ultimately fired him on August 20, 2020, purportedly "for cause." *Id.* at ¶¶ 72; 74. Maritz also furloughed Newman in 2020. *Id.* at ¶ 76. Hrdlicka voluntarily resigned from his position at Maritz Motivation, as did Valenti and Conwell, who both worked at Maritz Motivation for less than a year. *Id.* at ¶ 76. Maritz alleges that each of the Individual Defendants, except for Conwell, were part of a group of employees who were to work for a new company to be formed by Maritz (referred to in the Complaint as "NewCo"), but that Maritz decided not to move forward with NewCo on the same day that Carter was fired. *Id.* at ¶¶ 70-71; 73.

Maritz alleges that it had planned to spin-off a "portion of [Maritz Motivation's] sales incentives business," in which Maritz would retain a stake with other investors, but which would operate as a separate, independent business from Maritz. *Id.* at ¶¶ 3; 73. The Complaint does not further describe what "portion" of Maritz Motivation's sales incentives business was going to be "spun off" as "NewCo." Although Maritz has not alleged what products or services "NewCo" was to offer, they make the unfounded conclusion that Whistle "is virtually identical to the proposed NewCo." *Id.* at ¶ 9. Maritz concludes, all on information and belief, that Whistle is competing with it by "designing, selling, implementing, and/or consulting on channel sales incentive programs" based on their interpretation of Whistle's website, which even Maritz acknowledges could be overstating Whistle's services and capabilities. *Id.* at ¶¶ 30; 84-91; 93.

Based on Maritz's *belief* that Whistle is competing with it, Maritz alleges that it would be "effectively impossible" to do so without using its purported "confidential information" and "trade secrets." Complaint at ¶ 11. Maritz concludes that each of the Individual Defendants had "extensive access" to broadly described "confidential information" and "trade secrets," and Maritz claims that all of the Individual Defendants will inevitably disclose the purported "confidential information" and "trade secrets." Complaint at ¶¶ 11; 58; 92-93; 134.

<u>Argument</u>

## I.  Legal Standard.

A Rule 12(b)(6) motion seeks dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 566 U.S. at 678.

## II.  Counts II and III Fail to State Claims for Trade Secret Misappropriation.

### A.  Maritz Has Failed to Adequately Plead a Cause of Action Under the DTSA.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action…if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). To qualify as a trade secret under the DTSA, the information at issue must derive economic value from not being generally known or ascertainable through proper means and it must be subject to reasonable measures to keep the information secret.

5805333/9/20460.001

*See* 18 U.SC. § 1839(3). "Misappropriation" includes improper acquisition of a trade secret or the unauthorized disclosure or use of a trade secret by a person who improperly acquired it or knew of a duty to maintain the secrecy or limit the use of a trade secret. 18 U.S.C. § 1839(5).

### i. Maritz fails to adequately allege the existence of a trade secret.

#### 1. It is impossible to tell from the pleadings what purported "trade secrets" are at issue.

In pleading a trade secret misappropriation claim under the DTSA, a plaintiff must allege the purported trade secret with sufficient specificity to enable the defendant to be able to discern what trade secrets are at issue and to give the court the ability to assess its protectability. *Chatterplug, Inc. v. Digital Intent, LLC*, 2016 WL 6395409, *3 (N.D. Ill. October 28, 2016); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, *4 (N.D. Cal. March 23, 2018); *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, *4 (S.D.N.Y. January 23, 2018) ("a party alleging that it owns a trade secret must put forth specific allegations as to the information owned").

Here, however, it is entirely unclear what specific trade secrets Maritz claims exist. Indeed, Maritz merely makes conclusory allegations such as that they have "developed, generated, collected, and maintained, substantial volumes of trade secret information." Complaint at ¶ 128. Maritz then offers a non-exhaustive list of its supposed "trade secrets:"

> This trade secret information includes, *but is not limited to*: the structure and capabilities of Maritz's data warehouse and programs; the source code for Maritz's software; the compilation of data maintained by Maritz related to its participants in its channel incentives programs; Maritz's pricing, margin, and profitability information for its clients and products; and proprietary information related to Maritz's technology solutions and tools. The Individual Defendants had access to such information by virtue of their employment at Maritz.

*Id.* at ¶ 129 and ¶ 139 (emphasis added). The open-ended and unlimited nature of Maritz's list of purported "trade secrets" makes it impossible for Defendants to discern the identity of any specific

trade secrets.[3]  Maritz's vague allegations are made more problematic due to the fact that their claims are not limited to the actual, physical misappropriation of trade secrets, but purports to include information that is within the Individual Defendants' heads that Maritz believes will be inevitably disclosed.  Complaint at ¶¶ 133; 143.  Defendants, however, cannot discern what specific trade secrets Maritz believes them to have misappropriated.  Instead, Maritz simply contends that it has an unexhaustive list of vague trade secrets, that each of the Individual Defendants apparently had "extensive access" to all of those trade secrets, and that each of the Individual Defendants will inevitably disclose all of these supposed trade secrets.  This is insufficient, and Maritz must plead the existence of actual specific purported trade secrets. *Chatterplug*, 2016 WL 6395409 at *3; *Vendavo, Inc.*, 2018 WL 1456697 at *4; *Elsevier Inc.*, 2018 WL 557906 at *4.

### 2. Maritz fails to sufficiently plead that the information at issue derives economic value from not being generally known.

To survive a motion to dismiss, a plaintiff in a DTSA claim "must put forth specific allegations as to the information owned and its value." *Elsevier*, 2018 WL 557906 at *4.  Simply parroting the DTSA's requirement that the information derives value from not being generally known, however, is insufficient to support a conclusion that information constitutes a protectable trade secret. *Elsevier*, 2018 WL 557906 at *4 (holding that if a threadbare recitation of the DTSA's definition of a trade secret were sufficient to state a claim, "any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret"); *Pittsburgh Logistics Systems, Inc. v. LaserShip, Inc.*, 2019 WL 2443035, *10 (W.D.

---

[3] Even for the supposed trade secrets listed, Maritz includes vague categories such as "compilation of data" and "proprietary information" that are simply impossible for Defendants to discern what trade secrets, if any, are actually at issue in this case.

Pa. June 12, 2019); *ATS Group, LLC v. Legacy Tank and Industrial Services LLC*, 407 F. Supp. 3d 1186, 1200 (W.D. Okla. 2019).

The Complaint falls short here too. After reciting its non-exhaustive list of purported "trade secrets," Maritz simply concludes in paragraphs 130 and 140, which are identical, that:

> Such information derives independent economic value from not being known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from the information's disclosure.

Complaint at ¶¶ 130; 140. As in *Elsevier*, *ATS Group*, and *Pittsburgh Logistics*, Maritz simply repeats the elements of the DTSA as a conclusory allegation without providing sufficient factual allegations to support such a conclusion. *Elsevier*, 2018 WL 557906 at *4; *ATS Group*, 407 F. Supp. 3d at 1200; *Pittsburgh Logistics*, 2019 WL 2443035 at *10. This is insufficient and requires dismissal of the claim. *See Id.*

### ii. Maritz also fails to sufficiently allege misappropriation.

Even if the Complaint had sufficiently alleged the existence of a protectable trade secret, Count II still fails because the Complaint contains no factual allegations of misappropriation at all. Rather, Maritz jumps to the conclusion that "***it is inevitable*** that Whistle and the Individual Defendants have used (and/or will use)" Maritz's purported "trade secrets" both in "tangible and intangible format." *Id.* at ¶ 92 (emphasis added) and 133. In other words, Maritz's claim is not based solely on the alleged misappropriation of a tangible trade secret (if any exist), but relies on the inevitable disclosure of its purported "intangible" trade secrets that purportedly exist within the minds of the Individual Defendants merely because they worked at Maritz.

The "inevitable disclosure" doctrine has not been accepted or rejected by the Eighth Circuit, although many District Courts in the Eighth Circuit have declined to apply it. *See e.g. Serv. Corp. v. N. American Mortgage*, 2000 WL 33739340, *12 (E.D. Mo. Dec. 6, 2000); *International Business Mach. Corp. v. Seagate Technology, Inc.*, 941 F. Supp. 98, 101 and n. 1 (D.

Minn. 1992); *H&R Block E. Tax Serv., Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1074-75 (W.D. Mo. Nov. 2, 2000). Similarly, "Missouri has not formally adopted the doctrine of inevitable disclosure." *Schenck Process LLC v. Zeppelin Systems USA, Inc.*, 2018 WL 4279223, *2 (W.D. Mo. June 25, 2018). Even in jurisdictions where the inevitable disclosure doctrine is applicable, "courts do not often apply the inevitable disclosure doctrine" and are "cautious in [their] application of this doctrine." *Triumph Packaging Group v. Ward*, 834 F. Supp. 2d 796, 809 (N.D. Ill. 2011) (collecting cases).

Even if the "inevitable disclosure" doctrine was accepted, however, it would not apply here because "to prevail under this theory, employers must demonstrate inevitability exists with facts indicating that the nature of the secrets at issue and the nature of the employee's past and future work justify an inference that the employee cannot help but consider secret information." *H&R Block*, 122 F. Supp. 2d at 1076. Mere suspicion or apprehension is insufficient. *International Business Mach. Corp.*, 941 F. Supp. at 101; *See Also, Sip-Top, Inc. v. Ecko Group, Inc.*, 86 F.3d 827, 831 (8th Cir. 1996) (refusing to infer disclosure of confidential information because plaintiff's theory of disclosure was "nothing more than mere speculation"). An "inevitable disclosure" theory, like any other claim, must include sufficient factual allegations that support the inference. *Pittsburgh Logistics Systems*, 2019 WL 2443035 at *11.

Maritz's "inevitable disclosure" theory fails because it is unsupported by ***any*** factual allegations. Rather, Maritz arrives there by first concluding that each of the Individual Defendants – from Maritz Motivation's former President to an "Analyst – Developer I," who worked at the company for a matter of months, had "extensive access" to all of Maritz's vague and undefined "trade secrets" simply by virtue of being employed by Maritz Motivation.[4] Even if that conclusion

---

[4] The Complaint alleges that the two most junior Maritz Motivation employees, Valenti and Conwell, who were employed as a "Senior Decision Sciences Analyst" and an "Analyst-Developer I," respectively, only worked at Maritz

was supported by factual allegations, simply having access to trade secrets is not enough. *H&R Block*, 122 F. Supp. 2d at 1076 ("the flaw in Plaintiffs' argument is their unspoken assumption that exposure to trade secrets creates an inference of inevitable disclosure"); *Sip-Top, Inc.*, 86 F.3d at 831 (finding prior access to confidential information does not support an inference of disclosure). Drawing on the seminal "inevitable disclosure" case of *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), the *H&R Block* court found that it was necessary for the employee-defendants to have been involved in the trade secret's creation, like the defendant in *PepsiCo*, in order to apply the "inevitable disclosure" doctrine. *H&R Block*, 122 F. Supp. 2d at 1074-75 (noting "Seventh Circuit's indication that the theory employed therein will arise rarely").[5]

Maritz's theory of misappropriation is entirely insufficient because it is built on a foundation of conclusory allegations of vague "trade secrets" and the mere *belief* that Whistle *may* be competing with Plaintiffs, based solely on a few phrases from a website. Those unsupported conclusory allegations cannot bear the weight of Maritz's massive inferential leaps that the Individual Defendants will *inevitably* use or disclose Maritz's purported "trade secrets." Maritz's DTSA claim should be dismissed because it lacks any factual allegations of misappropriation.

---

Motivation for a matter of months. Complaint at ¶¶ 64-65, 76. Maritz's allegations that Valenti and Conwell, through their months-long employment with Maritz Motivation somehow acquired "extensive access" to all of Maritz's "substantial volumes of trade secret information" simply cannot be reconciled with Maritz's allegations that it closely guarded such "secrets" by restricting access only to "those employees with a need to know and use such information in the performance of their job duties." *Id.* at ¶¶ 58, 128-129, and 42. That is to say, Maritz's conclusion that *all* of the Individual Defendants had "extensive access" to *all* of its laundry list of supposed trade secrets is not only unsupported, it undermines the very existence of a protectable trade secret.

[5] Moreover, if the secrets are "not so easily memorized," that fact also weighs against applying the "inevitable disclosure" theory. *H&R Block*, 122 F. Supp. 2d at 1074-75. Here, although Maritz has not clearly alleged which supposed "trade secrets" are at issue, many of the generic terms that they cite are tangible items like software code and data that are not susceptible to memorization.

### iii. Maritz fails to allege that any purported "trade secrets" are related to interstate or foreign commerce.

Maritz's entire basis for filing this case in Federal Court is the DTSA. Despite that, the Complaint does not allege that any of the purported "trade secrets" are "related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). The Complaint merely alleges that Maritz operates "across the globe to provide personalized e-commerce platforms, rewards collection, and engagement strategies that reinforce Maritz's customers' brands, shape behavior, and inspire loyalty." Complaint at ¶ 25. The Complaint, however, does not indicate how any of the purported "trade secrets" relate to specific products or services, or whether those unmentioned products or services are used in, or intended for use in, interstate or foreign commerce. Thus, Maritz has failed to satisfy the jurisdictional requirements for a federal DTSA claim. *See*, 18 U.S.C. § 1836(b)(1).

### B. The MUTSA Claim Fails for the Same Reasons as the DTSA Claim.

Because the elements of "trade secret misappropriation claims under the DTSA and MUTSA are essentially the same," the MUTSA claim fails for the reasons stated in sections 2(A)(i)-(ii) *infra. See e.g. Phyllis Schlafly Revocable Trust v. Cori*, 2016 WL 6611133, *2 (E.D. Mo. Nov. 9, 2016) (analyzing DTSA and MUTSA claims together because the elements are essentially the same and the definitions of "trade secret" are essentially the same).

### III. Count I Should be Dismissed Because the Restrictive Covenant Agreements are Unenforceable as a Matter of Law.

Restrictive covenants are disfavored under Missouri law because they limit an individual's exercise or pursuit of their occupations and are a restraint of trade. *Sturgis Equipment Co., Inc. v. Falcon Indus. Sales Co.*, 930 S.W.2d 14, 16-17 (Mo. Ct. App. 1996); *see also* Mo. Rev. Stat. § 416.031. "Generally, because covenants not to compete are considered to be restraints on trade, they are presumptively void and are enforceable only to the extent that they are demonstratively

reasonable." *Brown v. Rollet Bros. Trucking Co., Inc.*, 291 S.W.3d 766, 773 (Mo. Ct. App. 2009). The Restrictive Covenant Agreements are unenforceable as a matter of law for two principal reasons: (i) they lack consideration, and (ii) there are insufficient allegations of a legitimate and protectable business interest.

### A.  The Restrictive Covenant Agreements Fail for Lack of Consideration.

A contract containing a restrictive covenant, like every other kind of contract, must be supported by consideration. *Mayer Hoffman McCann, P.C. v. Barton*, 614 F.3d 893, 902 (8th Cir. 2010) (applying Missouri law).  Consideration is something of value that moves from one party to the other, including a promise for which the promisor receives a legal right to which he would not otherwise have been entitled.  *Id.*  On the other hand, "a promise *is not* good consideration unless there is mutuality of obligation, so that each party has the right to hold the other to a positive agreement." *Sumners v. Service Vending Co., Inc.*, 102 S.W.3d 37, 41 (Mo. Ct. App. 2003) (emphasis in original).

"An offer of at-will employment, or the continuation of at-will employment, is simply not a source of consideration under Missouri contract law." *Durrell v. Tech Electronics, Inc.*, 2016 WL 6696070, *5 (E.D. Mo. Nov. 15, 2016) (finding that a restrictive covenant supported only by at-will employment status was insufficient consideration).  That is because in an at-will employment relationship:

> the employer makes no legally enforceable promise to do or refrain from doing anything that it is not already entitled to do.  The employer can still terminate the employee for any reason.

*Id. quoting Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 775 (Mo. banc 2014).

Maritz alleges that the only consideration exchanged in connection with the Restrictive Covenant Agreements was the Individual Defendants' continued at-will employment and "the *opportunity* for valuable training, work assignments and exposure to Confidential Information

11

during the course of [the Individual Defendants'] employment." Complaint at ¶ 47 and Ex. A to Complaint (emphasis added). However, merely reciting that an employee may receive the *opportunity* for training, work assignments, and exposure to purported "confidential information" at the whim of the employer, is simply a different way of describing at-will employment and is a promise of nothing at all. *Baker*, 450 S.W.3d at 776 (a promise is illusory when one party can unilaterally avoid its obligations). Just like at-will employment, which can be terminated at any time for any reason, the employer likewise can suspend, terminate, or withhold opportunities for the purported "valuable training, work assignments and exposure to Confidential Information" at will. Such an illusory promise does not create any mutuality of obligation or enforceable promise by the employer. *Id.* As there is no valid consideration to support the Restrictive Covenant Agreements, Count I should be dismissed with prejudice.

### B. Maritz Has Not Alleged a Protectable Business Interest.

"Restrictive covenants are not enforceable to protect an employer from mere competition by a former employee." *Sigma-Aldrich Corp. v. Vikin*, 451 S.W.3d 767, 771 (Mo. Ct. App. 2014). Rather, pursuant to Missouri law, restrictive covenants are enforceable only in limited circumstances to protect legitimate business interests of the employer and only when the restrictive covenant is no more restrictive than necessary to do so. *Healthcare Services of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. banc 2006). Missouri law recognizes two legitimate business interests that can support a restrictive covenant: trade secrets and customer contacts developed at the employer's expense. *Sigma-Aldrich Corp.*, 451 S.W.3d at 771; *Schmersahl, Treloar & Co., P.C., v. McHugh*, 28 S.W.3d 345, 349 (Mo. Ct. App. 2000).

As more fully described in section II, *infra*, Maritz has failed to sufficiently allege the existence of protectable trade secrets. Maritz has not alleged a protectable business interest in customer contacts either. Customer contacts are "essentially the influence an employee acquires

over his employer's customers through personal contact." *Schmersahl Treloar & Co.*, 28 S.W.3d at 349. A customer is "one who repeatedly has business dealings with a particular tradesman or business," and "an employee's ability to influence customers depends on the 'quality, frequency, and duration of an employee's exposure to an employer's customers[, which is] crucial in determining the covenant's reasonableness.'" *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 843 (Mo. banc 2012) (bracketing in original).

The Complaint, however, does not allege that any of the Individual Defendants had the type of close contact with Maritz's customers that would give rise to the ability to influence their customers, let alone that each of them did. Without even an allegation of close customer contacts by the Individual Defendants, Maritz cannot maintain a claim to a protectable business interest in its customer contacts. *Sturgis*, 930 S.W.2d at 17 (holding that no protectable business interest in customer contacts existed when employee had very little contact with customers, and therefore, minimal influence over them). Notably, the Complaint also contains no evidence that the Individual Defendants have contacted or attempted to contact any of Maritz's customers since Maritz laid them off or they voluntarily terminated their employment with Maritz.

Even if there were allegations of close customer contact, however, the customer non-solicitation provision is not narrowly tailored to protect them. It provides:

> During your employment with Maritz, and for 12 months after such employment ends (for any reason whatsoever), you agree not to solicit, divert, provide competitive services for, or otherwise take an action to diminish Maritz' [sic] business relationship with, any Maritz customer, supplier, vendor, or referral source that you had business contact with during the last 24 months of your employment with Maritz. You further agree not to take any of the above actions, either directly or indirectly, for your own benefit or for the benefit of another business.

Ex. A to Complaint. First, the purported restrictions on soliciting Maritz's suppliers, vendors, and referral sources are not reasonably related to protecting Maritz's customer contacts. Moreover,

the restriction is also far broader than necessary to protect Maritz's close customer contacts since it prohibits the employee from soliciting *any* customer with whom the employee had any business contact over the last 2 years of his or her employment with Maritz, regardless of how substantial the contact was. *See e.g., Sturgis*, 930 S.W.2d at 17. Accordingly, Count I should be dismissed.

## IV.     Count IV Fails to State a Claim for Breach of a Duty of Loyalty.

Under Missouri law, it is not a breach of the duty of loyalty for employees, while still employed, to agree among themselves to compete with their employer upon termination of their employment or to plan and take preparatory steps for competition. *National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 26-27 (Mo. banc 1966); *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 17 (Mo. banc 2012). Maritz claims that Carter, Dornfeld, and Wolfersberger breached a duty of loyalty owed to Maritz by "soliciting and encouraging Maritz customers, prospective customers, and employees to sever and/or forego their relationships with Maritz." Complaint. at ¶ 149. However, the Complaint does not contain any factual allegations that those Individual Defendants solicited any of Maritz's customers or prospective customers while still employed by Maritz. In fact, Carter, Dornfeld, and Wolfersberger were all terminated by Maritz.

Moreover, the alleged solicitation of Maritz's employees does not state a claim for breach of a duty of loyalty, since employees are free to agree among themselves to compete with their current employer upon termination of their employment. *Walter E. Zemitzsch, Inc.*, 712 S.W.2d at 421; *Western Blue Print Co.*, 367 S.W.3d 7 at 17. Therefore, Count IV fails to state a claim for beach of the duty of loyalty and should be dismissed.

## V.      Count V Fails to State a Claim for Unjust Enrichment.

In Count V, Maritz asserts a claim for unjust enrichment premised on the same conclusory allegations that the Individual Defendants have access to and *will inevitably* use or disclose Maritz's purported confidential information and trade secrets. Because the Complaint lacks any

factual allegations of actual misappropriation, the unjust enrichment claim fails for the same reasons as set forth in sections I (2)(A)(i)-(ii), *infra*.

## VI. Count VI Fails to State a Claim for Tortious Interference.

Maritz's tortious interference with contract claim is premised on the assumption that the Restrictive Covenant Agreements are valid and enforceable contracts and that the Individual Defendants have all "induced, encouraged, and assisted the other Individual Defendants" to breach the Restrictive Covenant Agreements. However, for the same reasons stated in Section III, *infra*, the Restrictive Covenant Agreements are void as a matter of law, and therefore, Count VI should be dismissed with prejudice. *See* Restatement (Second) of Torts § 766, comment (f.) (if for any reason a contract is void, "there is no liability for causing its breach"); *See Also, Howard v. Youngman*, 81 S.W.3d 101, 112-13 (Mo. App. 2002) (relying on section 766 of the Restatement (Second) of Torts).

## VII. Count VII Fails Because an Injunction is a Remedy and not a Cause of Action.

Count VII, styled as a count for "Preliminary and Permanent Injunction," should be dismissed because injunctive relief is a remedy and not an independent cause of action. *Secure Energy, Inc. v. Coal Synthetics, LLC*, 2010 WL 1691184, *3 (E.D. Mo. April 27, 2010); *Estate of Lane v. CMG Mortg., Inc.*, 2015 WL 2195176, *7 (D. Minn. May 11, 2015) ("injunctive relief is a remedy and not, in itself, a cause of action"). Accordingly, Count VII should be dismissed with prejudice.

### <u>Conclusion</u>

For the reasons set forth herein, the Motion to Dismiss should be granted and the Complaint should be dismissed.

5805333/9/20460.001

RESPECTFULLY SUBMITTED,

**DREW CARTER, CHRIS DORNFELD, JESSE WOLFERSBERGER, LAUREL NEWMAN, ANDREW HRDLICKA, BEN VALENTI, DANIEL CONWELL, AND WHISTLE SYSTEMS, LLC**

/s/ Richard Z. Wolf
Brian M. Wacker, #61913(MO)
Justin A. Welply, #65262(MO)
SMITHAMUNDSEN LLC
120 S. Central Avenue, Suite 700
Saint Louis, Missouri 63105
Ph:     314-719-3700
Fax:    314-719-3710
bwacker@salawus.com
jwelply@salawus.com

Richard Z. Wolf, #6301209(IL)
Matthew R. Barrett, #6308549(IL)
**HORWOOD MARCUS & BERK CHARTERED**
500 W. Madison Avenue, Suite 3700
Chicago, Illinois 60661
Ph:     312-606-3200
Fax:    312-606-3232
rwolf@hmblaw.com
mbarrett@hmblaw.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent on this 7th day of May, 2021 electronically by ECF notification all attorneys of record.

/s/ Richard Z. Wolf

5805333/9/20460.001