**Exhibit 26**



**PohlmanUSA®**
Court Reporting and Litigation Services

Drew Carter-Volume II- PARTIALLY CONFIDENTIAL

July 12, 2021

Maritz Holdings Inc. and Maritz Motivation Inc

vs.

Drew Carter, et al.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARITZ HOLDINGS INC. and    )
MARITZ MOTIVATION INC.,     )
                            )
        Plaintiffs,         )
                            )
vs.                         ) No. 4:21-cv-00438
                            )
DREW CARTER, et al.,        )
                            )
        Defendants.         )

DEPOSITION OF DREW CARTER
VOLUME II
VIA ZOOM
CONFIDENTIAL INFORMATION CONTAINED HEREIN

Taken on behalf of Plaintiffs
July 12, 2021

Kathy Heeb, CCR #1361

PohlmanUSA Court Reporting (877) 421-0099

---

INDEX OF EXAMINATION

QUESTIONS BY MR. ALLEN. . . . . . . . . . . . 4

INDEX OF EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| 56 | Email with attached pitch deck | 13 |
| 57 | Forwarded email and email exchange | 19 |
| 58 | Email with attached company update | 26 |
| 59 | Email and attached Whistle Research Projects | 30 |

---

1   IN THE UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF MISSOURI
2                EASTERN DIVISION
3    MARITZ HOLDINGS INC. and    )
4    MARITZ MOTIVATION INC.,     )
                                 )
5        Plaintiffs,             )
                                 )
6    vs.                         ) No. 4:21-cv-00438
                                 )
7    DREW CARTER, et al.,        )
                                 )
8        Defendants.             )
9
10       DEPOSITION OF DREW CARTER, produced, sworn,
     and examined on behalf of Plaintiffs, July 12, 2021,
11   commencing at 9:02 a.m. and concluding at 9:58 a.m.,
     via Zoom, before Kathy Heeb, a Certified Shorthand
12   Reporter for the State of Missouri.
13              REMOTE APPEARANCES
14   For Plaintiffs:
15       Ogletree, Deakins, Nash, Smoak & Stewart,
         P.C.
16       By:  Justin Allen, Esq.
         7700 Bonhomme Avenue, Suite 650
17       St. Louis, MO 63105
18   For Defendants:
19       Horwood Marcus & Berk
         By:  Richard Z. Wolf, Esq.
20       500 West Madison, Suite 3700
         Chicago, IL 60661
21
22
23
24
25

---

1        IT IS HEREBY STIPULATED AND AGREED by and
2    between Counsel for the Plaintiff and Counsel for the
3    Defendants, that this deposition may be taken in
4    shorthand by Kathy Heeb, a Certified Shorthand
5    Reporter, and afterwards transcribed into typewriting,
6    and the signature of the witness is reserved by
7    agreement of counsel and the witness.
8                    O-O-O
9             DREW CARTER,
10   having been first duly sworn, was
11   examined and testified as follows:
12            * * * * * * * * * * * *
13               EXAMINATION
14   BY MR. ALLEN:
15       Q.  All right.  Good morning, Mr. Carter.  You
16   and I met before.  As you recall, my name is Justin
17   Allen, attorney for Maritz.  We are here for your
18   recall deposition testimony.
19           I will remind you that you're under oath
20   and remind you again about the process.  This is
21   virtual, so we'll have to do a little bit better job
22   of not talking over each other.
23           I'm going to be showing you some documents
24   today via FileShare.  If you have any issues seeing
25   the documents or you need me to scroll through them so

EXAMINATION BY MR. ALLEN

**Page 5**

1  that you can review, let me know.  I can also send
2  them to you if we have any issues, but hopefully we
3  won't.
4      My understanding, sir, is that you had two
5  Maritz-issued laptops, is that correct?
6      A.  Yes.
7      Q.  And one was a Windows and one was a Mac, is
8  that correct?
9      A.  Yes.
10     Q.  Why did you have two different computers
11 from Maritz?
12     A.  I don't recall.
13     Q.  Do you know if that's something that was
14 standard within the Maritz organization, to provide
15 employees with two different computers?
16     A.  I don't know.
17     Q.  Do you know if you personally requested the
18 second laptop?
19     A.  No.
20     Q.  As you sit here, you don't have any
21 recollection as to why you had two different
22 computers?
23     A.  No.
24     Q.  Okay.
25     Did you use the two different computers

**Page 6**

1  differently based on which computer -- let me strike
2  that.
3      Did the two different computers have
4  different functions as you used them at Maritz?
5      A.  No.
6      Q.  Okay.
7      So you didn't use the Mac for one thing and
8  the Windows for something different, for example?
9      A.  Correct, I did not do that.
10     Q.  And did they both have access to your
11 Maritz email account?
12     A.  Yes.
13     Q.  And my understanding of your prior
14 testimony when Mr. O'Meara deposed you is you tried to
15 create a backup file of your email account on your
16 Windows computer, is that correct?
17     A.  Correct.
18     Q.  And then you couldn't do so because it was
19 blocked by the Maritz IT administrator, is that
20 correct?
21     A.  Correct, I could not do so.
22     Q.  Did you ever create a copy of your Maritz
23 email account from your other device?
24     A.  No.
25     Q.  Okay.

**Page 7**

1  So have you ever heard of a .olm file?
2      A.  Possibly.
3      Q.  Okay.  What is your understanding of what a
4  .olm file is?
5      A.  I don't recall.
6      Q.  So to make sure I understand your
7  testimony, you're saying that you never created --
8  successfully created a backup of your Maritz email
9  account?
10     A.  No, not the account, the account in
11 entirety.
12     Q.  What do you mean by that?
13     A.  Well, one option is to archive the entire
14 email, sort of, construct.  And Outlook has a service
15 to do that, and I was not able to archive the entire
16 account.
17     Q.  Were you successful in archiving some
18 portion of the account?
19     A.  Yes.
20     Q.  And do you remember what date that was on
21 or about?
22     A.  No.
23     Q.  Do you know if it was the same day that you
24 were terminated?
25     A.  I, at this point, no, I don't.

**Page 8**

1      Q.  Do you have any reason to dispute that you
2  did so on August 20, 2020?
3      A.  No.
4      Q.  So if the forensic neutral in these case
5  concluded that you had done so on August 20, 2020, you
6  would not dispute that?
7      A.  No.
8      MR. WOLF:  Object to form.
9      Q.  (BY MR. ALLEN)  And what did you do with
10 the portion of the email archive after you created it?
11     A.  I -- to my knowledge, I didn't do anything
12 with it.
13     Q.  Did you upload it to any cloud storage
14 account?
15     A.  Yes, sorry, I saved it.
16     Q.  And why did you create this archive of your
17 email -- your Maritz email account?
18     A.  At the time of my departure from Maritz, it
19 was very chaotic, and I was not clear on what the
20 future of either Maritz or my job prospects would be.
21 And so made -- archived some documents with the idea
22 that maybe there would be an opportunity for some
23 business development in the future.
24     Q.  Okay.  And when you say business
25 development, you mean going after particular

EXAMINATION BY MR. ALLEN

1  Q. Tell me about those conversations.
2  A. We have talked about things that -- sort of
3  inappropriate behavior. And, you know, the importance
4  of, you know, respecting agreements and, you know,
5  that sort of thing.
6  Q. When you refer to inappropriate behavior,
7  what are you referring to?
8  A. Just generally any -- any inappropriate
9  behavior. And, you know, the broad side of what's
10 okay, what's not okay, and how we use, sort of,
11 what -- what kind of standards are important to use,
12 just as people.
13 Q. Do you believe any of those three
14 individuals engaged in inappropriate behavior as it
15 relates to this lawsuit?
16 A. Well, I think that we all need some time to
17 reflect on all the facts before we come to a final
18 conclusion.
19 Q. Okay. Well, it was a yes-or-no question.
20 Do you believe that Andrew Hrdlicka engaged in any
21 inappropriate behavior as relates to Maritz's
22 confidential information and property?
23 A. Well, I'd like to review the totality of
24 what happened.
25 Q. Same answer for Daniel Conwell?

41

1  A. Yes.
2  Q. And same answer for Ben Valenti?
3  A. Yes.
4  Q. If it turns out any of those three
5  individuals engaged in what you refer to as
6  inappropriate behavior, do you, as the CEO of Whistle,
7  intend to take any disciplinary action with respect to
8  those three employees?
9  A. I think disciplinary action may well be
10 warranted.
11     MR. ALLEN: I have no further questions.
12     MR. WOLF: Okay. We will reserve
13 signature.
14
15    (Whereupon the deposition concluded at
16    9:58 a.m.)

42

1     REPORTER CERTIFICATE
2
3     I, KATHY HEEB, a Certified Shorthand
4  Reporter, do hereby certify that there came before me
5  via Zoom,
6         DREW CARTER
7  who was by me first duly sworn; that the witness was
8  carefully examined, that said examination was reported
9  by myself, translated and proofread using
10 computer-aided transcription, and the above transcript
11 of proceedings is a true and accurate transcript of my
12 notes as taken at the time of the examination of this
13 witness.
14     I further certify that I am neither
15 attorney nor counsel for nor related nor employed by
16 any of the parties to the action in which this
17 examination is taken; further, that I am not a
18 relative or employee of any attorney or counsel
19 employed by the parties hereto or financially
20 interested in this action.
21     Dated this 12th day of July 2021
22     _____
23     Kathy Heeb, CSR, CLR
24
25

43