## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MARITZ HOLDINGS INC. and MARITZ     )
MOTIVATION INC.,                    )
                                    )
        Plaintiffs,     )
                                    )    Case No. 4:21-cv-00438
v.                                  )
                                    )
DREW CARTER, *et al.*,              )
                                    )
        Defendants.     )

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

### Introduction

Plaintiffs Maritz Holdings Inc. ("Maritz Holdings") and Maritz Motivation Inc. ("Maritz Motivation") (collectively "Maritz") laid off or furloughed a number of the Individual Defendants in August of 2020. Those Individual Defendants who were laid-off or furloughed by Maritz subsequently formed Whistle. More than seven months later, Maritz concluded that Whistle is competing with Maritz, and, based on that conclusion, assumes that the only way that Whistle could compete with Maritz is by using Maritz's supposed trade secrets.

Maritz's original complaint consisted of conclusory allegations that failed to state a claim. After Defendants pointed out the original complaint's deficiencies in a Rule 12(b)(6) Motion to Dismiss, Maritz elected to file an Amended Complaint. Defendants then moved to dismiss the Amended Complaint, based on largely the same deficiencies that existed in the original Complaint. In response, Maritz again sought leave to amend. Now before the Court is Maritz's Second Amended Complaint. Many of the deficiencies in the Second Amended Complaint are the same as those addressed by Defendants in their two prior motions to dismiss.

First, although Maritz now includes certain allegations of specific purported trade secrets that it contends were misappropriated by certain of the Defendants, it fails to allege any misappropriation as to other Defendants. Instead, Maritz improperly groups all of the Defendants together and concludes that *all* Defendants have misappropriated purported trade secrets, despite there being no allegations that would support that sweeping conclusion. Beyond that, Maritz attempts to rely on the inevitable disclosure theory of misappropriation to support vague and general claims of misappropriation of unidentified and "intangible" supposed trade secrets. Second, the Second Amended Complaint also confirms that Maritz's claim for breach of the restrictive covenant agreements fails because they lack consideration and are otherwise unenforceable on their face. The other claims fail because they are derivative of the trade secret claims and the breach of contract claims, or they suffer from additional legal defects that require dismissal. Accordingly, the Second Amended Complaint should be dismissed.

## Relevant Background

Maritz provides loyalty and incentive programming and strategy. Amended Complaint, ¶ 38[1] Maritz Motivation "is the Maritz subsidiary responsible for designing, marketing, selling, and implementing programs intended to cultivate customer loyalty, employee engagement, and increased sales – including channel sales incentive programing." *Id.* at ¶ 39. The Second Amended Complaint describes "channel sales incentive programs" as "a series of policies and programs implemented within a business to incentivize and encourage a wide range of desirable behaviors for its channel sales partners." *Id.* at ¶ 42.

---

[1] Although Defendants generally dispute the veracity of the Second Amended Complaint's allegations, they are taken as true solely for the purposes of the Motion to Dismiss.

5960339/5/20460.001

Defendants Carter, Dornfeld, Wolfersberger, Newman, Hrdlicka, Valenti, and Conwell (collectively the "Individual Defendants") are all former employees of either Maritz Motivation or Maritz Holdings and held various positions at Maritz ranging in seniority from President to "Analyst – Developer I." *Id.* at ¶¶ 71-77. Maritz alleges that each of the Individual Defendants electronically signed a Confidentiality, Non-Competition, Non-Solicitation and Inventions Agreement (the "Restrictive Covenant Agreements") through Maritz's "Learning Management System module in conjunction with" the Individual Defendant's "new hire paperwork." *Id.* at ¶ 59.[2] The Restrictive Covenant Agreements contain broadly worded non-compete, non-solicitation, and confidentiality provisions. *See,* Ex. A to Second Amended Complaint. Maritz concedes that it provided no consideration to the Individual Defendants other than the purported consideration of continued at-will employment and "the *opportunity* for valuable training, work assignments, and exposure to Confidential Information during the course of [the Individual Defendants'] employment." *Id.* at ¶¶ 61-62 and Ex. A to Second Amended Complaint (emphasis added).

"By the end of 2020," Maritz terminated the employment of Dornfeld and Wolfersberger "as part of a reduction in force." Amended Complaint at ¶ 103. Maritz also planned to lay-off Carter and ultimately fired him on August 24, 2020, purportedly for cause. *Id.* at ¶¶ 84; 89. Maritz also furloughed Newman in 2020. *Id.* at ¶ 103. Hrdlicka voluntarily resigned from his position at Maritz Motivation, as did Valenti and Conwell, who both worked at Maritz Motivation for less than a year. *Id.* Maritz alleges that each of the Individual Defendants, except for Conwell, were part of a group of employees who were to work for a new company to be formed by Maritz

---

[2] The Second Amended Complaint includes only an unsigned version of the Restrictive Covenant Agreement as Exhibit A.

5960339/5/20460.001

(referred to in the Second Amended Complaint as "NewCo"), but that Maritz decided not to move forward with NewCo on August 20, 2020. *Id.* at ¶¶ 81-82; 85.

Maritz concludes, all on information and belief, that Whistle is competing with it by "designing, selling, implementing, and/or consulting on channel sales incentive programs" based on Maritz's interpretation of Whistle's website, which even Maritz acknowledges could be overstating Whistle's services and capabilities. *Id.* at ¶¶ 41; 114-121; 125. Based on Maritz's *belief* that Whistle is competing with it, Maritz alleges that it would be "effectively impossible" to do so without using its purported "confidential information" and "trade secrets." *Id.* at ¶ 21. Maritz concludes that each of the Individual Defendants had "extensive access" to broadly described "confidential information" and "trade secrets," and Maritz claims that all of the Individual Defendants will inevitably disclose the purported "confidential information" and "trade secrets." Second Amended Complaint at ¶¶ 21; 70; 122-124; 170.

## Argument

### I. Legal Standard.

A Rule 12(b)(6) motion seeks dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 566 U.S. at 678.

5960339/5/20460.001

**II.      Count I Should Be Dismissed Because the Restrictive Covenant Agreements Lack Consideration and Are Unenforceable As a Matter of Law.**

Restrictive covenants are disfavored under Missouri law because they limit an individual's exercise or pursuit of their occupations and are a restraint of trade. *Sturgis Equip. Co., Inc. v. Falcon Indus. Sales Co.*, 930 S.W.2d 14, 16-17 (Mo. Ct. App. 1996); *see also* Mo. Rev. Stat. § 416.031. "Generally, because covenants not to compete are considered to be restraints on trade, they are presumptively void and are enforceable only to the extent that they are demonstratively reasonable." *Brown v. Rollet Bros. Trucking Co., Inc.*, 291 S.W.3d 766, 773 (Mo. Ct. App. 2009). The Restrictive Covenant Agreements at issue here are unenforceable as a matter of law because they lack consideration and are overbroad and unenforceable on their face.

**A.  The Restrictive Covenants Are Unsupported by Adequate Consideration.**

A contract containing a restrictive covenant, like every other contract, must be supported by consideration. *Mayer Hoffman McCann, P.C. v. Barton*, 614 F.3d 893, 902 (8th Cir. 2010). Consideration is something of value that moves from one party to the other, including a promise for which the promisor receives a legal right to which he would not otherwise have been entitled. *Id.* On the other hand, "a promise *is not* good consideration unless there is mutuality of obligation, so that each party has the right to hold the other to a positive agreement." *Sumners v. Serv. Vending Co., Inc.*, 102 S.W.3d 37, 41 (Mo. Ct. App. 2003) (emphasis in original).

"An offer of at-will employment, or the continuation of at-will employment, is simply not a source of consideration under Missouri contract law." *Durrell v. Tech Elec., Inc.*, 2016 WL 6696070, *5 (E.D. Mo. Nov. 15, 2016) (a restrictive covenant supported only by at-will employment was insufficient consideration).   That is because in an at-will employment relationship:

5

the employer makes no legally enforceable promise to do or refrain from doing anything that it is not already entitled to do. The employer can still terminate the employee for any reason.

*Id. quoting Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 775 (Mo. banc 2014).

Maritz alleges that the only consideration exchanged in connection with the Restrictive Covenant Agreements was the Individual Defendants' continued at-will employment and "the *opportunity* for valuable training, work assignments and exposure to Confidential Information during the course of [the Individual Defendants'] employment." Second Amended Complaint at ¶ 50 and Ex. A to Second Amended Complaint (emphasis added). However, merely reciting that an employee may receive the *opportunity* for training, work assignments, and exposure to purported "confidential information" at the whim of the employer, is simply a different way of describing at-will employment and is a promise of nothing at all. *Baker*, 450 S.W.3d at 776 (a promise is illusory when one party can unilaterally avoid its obligations). Just like at-will employment, which can be terminated at any time for any reason, the employer likewise can suspend, terminate, or withhold opportunities for the purported "valuable training, work assignments and exposure to Confidential Information" at will. Such an illusory promise does not create any mutuality of obligation or enforceable promise by the employer. *Id.* Since there is no valid consideration to support the Restrictive Covenant Agreements, Count I should be dismissed with prejudice.

**B. The Restrictive Covenants Are Patently Overbroad.**

Even if they were supported by adequate consideration, the Restrictive Covenant Agreements are unenforceable because they are overbroad and unreasonable on their face. *See e.g. Paradise v. Midwest Asphalt Coatings, Inc.*, 316 S.W.3d 327, 330 (Mo. Ct. App. 2010) (courts

5960339/5/20460.001

can invalidate an overbroad restrictive covenant); *Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428,

437 (Mo. Ct. App. 2008) ("blue penciling" is optional, and courts need not rewrite provisions).

Maritz's confidentiality provision is unenforceable because it is unlimited in its temporal

scope. *Khazai v. Watlow Elec. Mfg. Co.*, 201 F. Supp. 2d 967, 975 (E.D. Mo. 2001) (applying

Missouri law) ("[c]learly, such an open-ended time period is unreasonable and unenforceable").

It is also unenforceable because "Confidential Information" is defined so broadly as to include

virtually every piece of information regarding Maritz (defined to include every Maritz entity). *See*

Ex. A to Second Amended Complaint. Maritz does not have any protectable business interest in

non-confidential information, and much of the broad and general categories of information

contained in Maritz's definition of "Confidential Information" necessarily include information that

is not confidential. Therefore, Maritz's attempt to define nearly every facet of its business as

"Confidential Information" renders the confidentiality provision unenforceable on its face.

The employee non-solicitation is also overbroad and unenforceable. It states:

> During your employment with Maritz [defined to include every Maritz entity] and
> for 12 months after such employment ends (***for any reason whatsoever***), you agree
> not to solicit or influence ***any Maritz employee*** to end his/her employment with
> Maritz (***even if the employee being solicited initiates contact***) or otherwise attempt
> to interfere with the employment relationship between Maritz and any Maritz
> employee, including the employee's duty of loyalty to Maritz. This means you
> cannot solicit ***or influence*** any of these employees to end his/her employment with
> Maritz, either ***directly or indirectly***, for your own benefit or for the benefit of
> another business. For purposes of this paragraph, "Maritz employee" includes
> anyone who is employed by Maritz at the time of solicitation, or ***who was employed
> by Maritz within 90 days prior to any such solicitation***.

*Id*. Thus, Maritz sees fit to restrict its former employees, for a period of a year after their

employment ends (even if they were let go, as over a thousand of Maritz employees were in 2020),

from soliciting *or indirectly influencing* any former colleague (even those who no longer work at

Maritz, if their employment ended less than 90 days previously) to end his or her employment with

7

Maritz, whatever the position (i.e. senior executive to janitor and everything in between) across the entire Maritz enterprise (consisting of thousands of employees). The employee solicitation provision is hopelessly overbroad, untethered to any protectable business interest, and therefore, unenforceable. Accordingly, Count I should be dismissed.

## III. Counts II and III Fail to State Claims for Trade Secret Misappropriation.

### A. Maritz Has Failed to Adequately Plead a Cause of Action Under the Defend Trade Secrets Act ("DTSA").

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action…if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). To qualify as a trade secret under the DTSA, the information at issue must derive economic value from not being generally known or ascertainable through proper means, and it must be subject to reasonable measures to keep the information secret. *See* 18 U.S.C. § 1839(3). "Misappropriation" includes improper acquisition of a trade secret or the unauthorized disclosure or use of a trade secret by a person who improperly acquired it or knew of a duty to maintain the secrecy or limit the use of a trade secret. 18 U.S.C. § 1839(5).

Maritz's misappropriation of trade secret claims is based on improper "group pleading" because Maritz continues to lump all of the defendants together without alleging how each of the defendants allegedly misappropriated Maritz's purported trade secrets. Although the Second Amended Complaint includes some specific factual allegations related to Carter, Hrdlicka, Valenti and Conwell, Maritz fails to allege *any* misappropriation of trade secrets by Newman, Wolfersberger or Dornfeld. *See,* the Second Amended Complaint, ¶¶ 90, 99. Rather Maritz simply groups those defendants into conclusory allegations that *all* of the Defendants purportedly misappropriated trade secrets. *Id.* at ¶¶ 123, 140, 168-170. Under the Federal Rules of Civil Procedure, "[a] complaint based on a theory of collective responsibility must be dismissed"

8

because "each defendant is entitled to know what he or she did that is asserted to be wrongful," and "that is true even for allegations of conspiracy." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *see also Boggs v. Am. Optical Co.*, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) ("[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant"). Counts II and III of Maritz's Second Amended Complaint should be dismissed on that basis alone.

Beyond that, as to Carter, Hrdlicka, Valenti and Conwell, the allegations of misappropriation are not even limited to the specific purported trade secrets that Maritz alleges to have been misappropriated. Indeed, Maritz alleges a non-exhaustive list of its supposed "trade secrets:

> This trade secret information includes, *but is not limited to*: the structure and capabilities of Maritz's data warehouse and programs; the source code for Maritz's software; the compilation of data maintained by Maritz related to its participants in its channel incentives programs; and Maritz's business plans and customer proposals.

*See,* the Second Amended Complaint, ¶ 163 (emphasis added). The open-ended and unlimited nature of Maritz's list of purported "trade secrets" makes it impossible for Defendants to discern the identity of any specific trade secrets, let alone which purported trade secrets were allegedly misappropriated by which Defendant. This is insufficient to "provide fair notice of the grounds for the claims made against a particular defendant," and therefore Counts II and III should be dismissed. *Boggs*, 2015 WL 300509, at *2.

Moreover, Maritz's vague allegations are made more problematic due to the fact that their claims include both "tangible and intangible" trade secrets. *See,* the Second Amended Complaint, ¶ 168. Defendants are forced to guess as to what supposed "intangible" trade secrets they possess.

5960339/5/20460.001

Maritz appears to be contending that the Individual Defendants possess information in their heads that will be inevitably disclosed through their employment with Whistle. The "inevitable disclosure" doctrine, however, has not been accepted or rejected by the Eighth Circuit, although many District Courts in the Eighth Circuit have declined to apply it. *See e.g. Serv. Corp. v. N. Am. Mortg.*, 2000 WL 33739340, *12 (E.D. Mo. Dec. 6, 2000); *Int'l Bus. Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 and n. 1 (D. Minn. 1992); *H&R Block E. Tax Serv., Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1074-75 (W.D. Mo. Nov. 2, 2000). Similarly, "Missouri has not formally adopted the doctrine of inevitable disclosure." *Schenck Process LLC v. Zeppelin Sys. USA, Inc.*, 2018 WL 4279223, *2 (W.D. Mo. June 25, 2018). Even in jurisdictions where the inevitable disclosure doctrine is applicable, "courts do not often apply the inevitable disclosure doctrine" and are "cautious in [their] application of this doctrine." *Triumph Packaging Grp. v. Ward*, 834 F. Supp. 2d 796, 809 (N.D. Ill. 2011) (collecting cases).[3] The parties have already conducted extensive discovery and Maritz should be able to clearly identify the specific trade secrets that it believes are at issue in this case and which particular Defendant misappropriated the same.

## B. The MUTSA Claim Fails For the Same Reasons As the DTSA Claim.

Because the elements of "trade secret misappropriation claims under the DTSA and MUTSA are essentially the same," the MUTSA claim fails for the reasons stated in sections

---

[3] Even if the "inevitable disclosure" doctrine was accepted, however, it would not apply here because "to prevail under this theory, employers must demonstrate inevitability exists with facts indicating that the nature of the secrets at issue and the nature of the employee's past and future work justify an inference that the employee cannot help but consider secret information." *H&R Block*, 122 F. Supp. 2d at 1076. Mere suspicion or apprehension is insufficient. *Int'l. Business Mach. Corp.*, 941 F. Supp. at 101; *See Also, Sip-Top, Inc. v. Ecko Grp., Inc.*, 86 F.3d 827, 831 (8th Cir. 1996) (refusing to infer disclosure of confidential information because plaintiff's theory of disclosure was "nothing more than mere speculation"). An "inevitable disclosure" theory, like any other claim, must include sufficient factual allegations that support the inference. *Pittsburgh Logistics Sys.*, 2019 WL 2443035 at *11. No such factual allegations have been made by Maritz in the Second Amended Complaint.

5960339/5/20460.001

2(A)(i)-(ii) *infra*. *See e.g. Phyllis Schlafly Revocable Trust v. Cori*, 2016 WL 6611133, *2 (E.D. Mo. Nov. 9, 2016) (analyzing DTSA and MUTSA claims together because the elements are essentially the same and the definitions of "trade secret" are essentially the same).

**IV.    Count IV Fails to State a Claim for Breach of Fiduciary Duty or a Duty of Loyalty.**

Count IV alleges that Carter, Dornfeld, and Wolfersberger "moved forward with plans to usurp the business model and plans for NewCo" after learning that Maritz determined not to move forward with the NewCo spin-off. *See* Second Amended Complaint at ¶ 187. Although Maritz uses the word "usurp," Maritz has not alleged the usurpation of a corporate opportunity. *Chemical Dynamics, Inc. v. Newfeld*, 728 S.W.2d 590, 592-93 (Mo. Ct. App. 1987) (the "corporate opportunity doctrine" exists to prevent a fiduciary from taking for himself a business opportunity within the line of the corporation's business that was presented to him in his capacity as an agent of the corporation, without first presenting the opportunity to the corporation). Maritz's "business model and plans" for spinning-off a portion of its business are not subject to the corporate opportunity doctrine because they are not business opportunities. Rather, as Maritz concedes in its Second Amended Complaint, the plan for NewCo was simply a continuation of the same business activities in which Maritz was already engaged, only spun out into a separate entity to be financed by third parties. *See* Second Amended Complaint at ¶¶ 9-10 ("The plans for NewCo involved marketing and selling the same kind of products and services offered by Maritz Motivation, both then and now") and ¶ 85 ("Maritz decided it would continue offering these products and services internally through Maritz Motivation, as it had done before"). Therefore, according to Maritz, the supposed "corporate opportunity" that Maritz alleges was "usurped" is simply the idea to offer similar products and services as Maritz. *Id.* The "corporate opportunity" doctrine does not prohibit competition. The Second Amended Complaint does not allege that

11

Carter, Dornfeld, or Wolfersberger diverted prospective clients or other business opportunities

from Maritz to Whistle, and therefore, it fails to state a claim for breach of fiduciary duty.[4]

The gist of Maritz's breach of fiduciary duty claim against Carter, Dornfeld, and

Wolfersberger is that, after Maritz informed them that they were all being laid off, they started

planning to form a new business venture while still employed with Maritz. Under Missouri law,

however, it is not a breach of the duty of loyalty for employees, while still employed, to agree

among themselves to compete with their employer upon termination of their employment or to

plan and take preparatory steps for competition. *Nat'l. Rejectors, Inc. v. Trieman*, 409 S.W.2d 1,

26-27 (Mo. banc 1966); *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 17 (Mo. banc

2012). That principle should hold especially true in this case, where the employees' decision to

form a new business was necessitated by the fact that they were going to be laid off by their

employer.

Moreover, Maritz's conclusion that Carter, Dornfeld, and Wolfersberger breached a duty

of loyalty owed to Maritz by soliciting Maritz's customers, prospective customers, and employees

also fails. First, the Second Amended Complaint does not contain any well-pled allegations that

the Individual Defendants solicited any of Maritz's customers or prospective customers *at any*

*time*, let alone that such conduct occurred during their employment with Maritz. Second, any

alleged solicitation of Maritz's employees does not state a claim for breach of a duty of loyalty,

since employees are free to agree among themselves to compete with their current employer upon

termination of their employment. *Walter E. Zemitzsch, Inc. v. Harrison*, 712 S.W.2d 418, 421

---

[4] Even if the idea of providing similar products or services as Maritz could fall within the ambit of the "corporate opportunity" doctrine, Maritz concedes that it determined not to move forward with its NewCo plans. Thus, the supposed "usurpation" of those plans cannot form the basis of a breach of fiduciary duty claim. *Chemical Dynamics, Inc. v. Newfeld*, 728 S.W.2d 590, 593 (Mo. Ct. App. 1987) (if opportunity is presented to corporation first, there is no breach of fiduciary duty for an officer or director to later avail themselves of opportunity).

12

(Mo. Ct. App. 1986); *Western Blue Print Co.*, 367 S.W.3d 7 at 17.  Therefore, Count IV fails to state a claim for breach of the duty of loyalty and should be dismissed.

**V.      Count V Fails to State a Claim for Unjust Enrichment.**

In Count V, Maritz asserts a claim for unjust enrichment premised on the same conclusory allegations that *all* of the Individual Defendants have access to and *will inevitably* use or disclose a broad and unlimited list of general categories of information that Maritz contends are trade secrets, including "intangible" trade secrets that purportedly reside in the Individual Defendants' heads.    Because the Second Amended Complaint lacks factual allegations of actual misappropriation with respect to all of the Individual Defendants, the unjust enrichment claim fails for the same reasons as set forth in section III, *infra*.

**VI.     Count VI Fails to State a Claim for Tortious Interference.**

Maritz's tortious interference with contract claim is premised on the assumption that the Restrictive Covenant Agreements are valid and enforceable contracts and that the Individual Defendants have all "induced, encouraged, and assisted the other Individual Defendants" to breach the Restrictive Covenant Agreements.  However, for the same reasons stated in Section II, *infra*, the Restrictive Covenant Agreements are void as a matter of law, and therefore, Count VI should be dismissed with prejudice.

**VII.    Count VII Fails to State a Claim for Violation of the Computer Fraud and Abuse Act**

In Count VII, Maritz alleges that Carter, Hrdlicka, Valenti and Conwell violated the Computer Fraud and Abuse Act (the "CFAA").  As an initial matter, Maritz does not specify which section of the CFAA they contend were violated by Carter, Hrdlicka, Valenti or Conwell.  This deficiency alone renders the claim deficient.  Beyond that, the allegations contained in the Second Amended Complaint do not give rise to a claim under the CFAA as a matter of law.  A civil claim

5960339/5/20460.001

under the Computer Fraud and Abuse Act requires (i) damage or loss (ii) by reason of (iii) a violation of § 1030 of the CFAA, and (iv) it must include conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V). *Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing & Consulting, LLC*, 600 F.Supp. 2d 1045, 1050 (E.D. Mo. 2009). Notably, the CFAA was "not meant to cover the disloyal employee who walks off with confidential information" and the "CFAA should not be used to prosecute employees who are merely disloyal." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l*, 616 F. Supp. 2d 805, 813 (N.D. Ill. 2009). Instead, the underlying concern of the CFAA is "damage to data." *Id.*

In *Van Buren v. United States*, the United States Supreme Court recently resolved a split among the circuit courts of appeal regarding whether an employee violates the CFAA when he "exceeds authorization" by accessing a computer with authorization "but then obtains information located in particular areas of the computer – such as files, folders, or databases – that are off limits to him." *Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021). Prior to the *Van Buren* decision, some courts held that an employee violates the CFAA merely by "exceeding authorization," or using information that the employee was entitled to access for a purpose that was unauthorized. *Mineral Area Cmty. Psychiatric Rehab. Ctr., Inc. v. Duncan*, 2021 WL 84490, *1-2 (E.D. Mo. January 11, 2011). Other courts subscribed to a narrower reading of the CFAA, whereby "the misuse or misappropriation of confidential information stored on a computer to which the defendant has authority to access does not give rise to liability." *Id.* (internal citations omitted). In *Van Buren*, the Supreme Court resolved that conflict in favor of the narrower interpretation of the CFAA. *Van Buren*, 141 S. Ct. at 1662.

While the Second Amended Complaint does not specify which section of the CFAA is at issue, it does make clear that Maritz's claim is premised on the type of broad reading of the CFAA

that *Van Buren* rejected because it is based on Carter, Hrdlicka, Valenti and Conwell "exceeding their authorization" or "exceeding the scope of their authorization" in saving alleged confidential or trade secret information to "cloud-based storage platforms" or a "personal email account." *See,* the Second Amended Complaint, ¶¶ 206-208. Maritz does not allege that Carter, Hrdlicka, Valenti or Conwell accessed information that was off limits to them. In fact, the allegations in the Second Amended Complaint establish the opposite. Maritz alleges that each of the Individual Defendants had extensive access to Maritz's supposed trade secrets and confidential information. As to Carter, Maritz alleges that he forwarded emails that were contained *in his own Maritz email account* to his personal email account. *See,* the Second Amended Complaint, ¶ 90. Maritz does not allege that Carter's own email account was off limits to him, nor can it. As to Hrdlicka, Valenti and Conwell, Maritz alleges that, as part of their positions at Maritz, "each of them had extensive access to Maritz's code repository, software program designs, database structure and architecture, and channel sales incentives databases" and that they checked into Maritz's code repository on a "near-daily basis." *See,* the Second Amended Complaint, ¶ 80. Maritz then alleges that "source code and database schema files" were then misappropriated by Valenti, Conwell and Hrdlicka and that such actions "exceeded their authorization to access Maritz's computer network." *See,* the Second Amended Complaint, ¶¶ 99, 206. These are precisely the type of allegations that do not support a cause of action under the CFAA. *See, Van Buren*, 141 S. Ct. at 1662. Therefore, Count VII should be dismissed with prejudice.

## Conclusion

For the reasons set forth herein, the Motion to Dismiss should be granted and the Second Amended Complaint should be dismissed.

5960339/5/20460.001

RESPECTFULLY SUBMITTED,

**DREW CARTER, CHRIS DORNFELD, JESSE WOLFERSBERGER, LAUREL NEWMAN, ANDREW HRDLICKA, BEN VALENTI, DANIEL CONWELL, WHISTLE SYSTEMS, LLC AND WE WHISTLE, LLC**


/s/ *Matthew R. Barrett*

Richard Z. Wolf, #6301209(IL *pro hac vice*)
Matthew R. Barrett, #6308549(IL *pro hac vice*)
**HORWOOD MARCUS & BERK CHARTERED**
500 W. Madison Avenue, Suite 3700
Chicago, Illinois 60661
Ph:      312-606-3200
Fax:     312-606-3232
rwolf@hmblaw.com
mbarrett@hmblaw.com

Brian M. Wacker, #61913(MO)
Justin A. Welply, #65262(MO)
**SMITHAMUNDSEN LLC**
120 S. Central Avenue, Suite 700
Saint Louis, Missouri 63105
Ph:      314-719-3700
Fax:     314-719-3710
bwacker@salawus.com
jwelply@salawus.com


ATTORNEYS FOR DEFENDANTS

16

## CERTIFICATE OF SERVICE

The undersigned attorney of record hereby certifies that he caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** to be filed electronically in the United States District Court for the Eastern District of Missouri on this 10th day of August, 2021. Notice and a complete copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF electronic filing system.


/s/      *Matthew R. Barrett*

5960339/5/20460.001